IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GGC ASSOCIATES, LLC,  )
    Plaintiff,  )
                                                )
       v.  )     Civil Action No. 3:17cv402
                                                )
W. CLAY HAMNER and  )
BRIAN FAUVER,  )
    Defendants.  )
_____)

## MEMORANDUM OPINION

GGC Associates, LLC ("GGC") brings this action against W. Clay Hamner ("Hamner") and Brian Fauver (Fauver) (collectively, "Defendants") alleging actual fraud and constructive fraud. This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (ECF No. 10). The motion has been fully briefed and is ripe for review. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process at this stage. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Hamner and Fauver are the managing members of Southern Season, Inc. ("SSI"), an investment company. (Amended Compl. ¶¶ 4, 5.) On January 28, 2013, SSI, through Hamner and Fauver's actions, entered into a Deed of Lease ("Lease") with Midtown Land Partners, LLC ("MLP") on commercial property in Henrico County, Virginia to be occupied by an SSI store and restaurant. (*Id.* ¶¶ 6, 12.) The individual members of MLP are identical with the individual members of GGC; MLP is a proxy for GGC in the instant matter. (*Id.* ¶ 8.) Thereafter, SSI and

MLP amended the Deed of Lease and MLP assigned its interest to LM Retail, LLC ("LM"), a subsidiary wholly owned and managed by MLP. (*Id.* ¶ 7.)

Under Paragraph 33 of the Lease, SSI was required to provide LM with a $550,000 security deposit. (*Id.* ¶ 9.) The Lease permitted SSI to use an unconditional, irrevocable, standby Letter of Credit ("LOC") that provided LM with additional collateral to secure SSI's obligations under the Lease. (*Id.* ¶¶ 9–10.) The term of the Lease was for twenty years, and SSI's tenancy began on October 1, 2014. (*Id.* ¶ 12).

Initially, SSI struggled to meet its payment obligations under the Lease, failing to pay rent on time for the first three months. (*Id.* ¶ 13.) In March 2015, six months into SSI's tenancy, Hamner requested that LM reduce SSI's rent obligations or release part or all of SSI's LOC to use as a borrowing base. (*Id.* ¶ 14.) LM refused to release SSI'S LOC. (*Id.* ¶ 15.) In April 2015, SSI again failed to timely pay rent. (*Id.* ¶ 16.) Hamner made similar requests for release of SSI's LOC on April 22, 2015 and April 24, 2015, but LM declined both requests. (*Id.* ¶¶ 17–20.)

On April 30, 2015, six days after Hamner's last request, Wayne Chase, on behalf of LM and MLP, contacted Hamner with the following proposal:

    a. [GGC] would make an equity contribution to SSI, contingent on timely payment of rent by SSI to [LM];

    b. *The existing $550,000 [LOC] would stay in place*; and

    c. SSI would acknowledge that [LM] was exceeding the development requirements established in the Lease.

(*Id.* ¶ 21 (emphasis added).) Hamner still insisted on a rental deferral or adjustment for SSI. (*Id.* ¶ 22.)

In August 26, 2015, Fauver negotiated the terms of the proposal with LM and MLP representative, Jim Wilvert ("Wilvert"). (*Id.* ¶ 23.) Specifically, Fauver and Wilvert discussed

GGC making a $300,000 equity contribution to SSI, to be paid in monthly installments over a year and contingent on SSI's timely rent payments. (*Id.* ¶ 24.) On or about August 31, 2015, Hamner engaged in these negotiations, suggesting a $300,000 lump sum contribution. (*Id.* ¶ 25.) Wilvert responded that LM and MLP preferred to make a monthly contribution of $25,000. (*Id.*) In response to both Hamner and Fauver, LM reiterated that GGC's equity contribution to SSI remained contingent on leaving the entire LOC fully in place. (*Id.* ¶ 26.)

In its Amended Complaint, GGC alleges that Hamner and Fauver committed fraud by omission on four separate occasions. Based on the terms of agreement struck by the parties, GGC made an investment of $25,000 on August 31, 2015. (*Id.* ¶ 33.) Neither Hamner nor Fauver discussed the status of the LOC with GGC or its affiliates at that time. On January 8, 2016, Fauver inquired as to how GGC would make its January payment; Fauver did not mention the status of the LOC at this time. (*Id.* ¶ 34.) GGC made equity contributions of $25,000 to SSI on three separate occasions in 2016: January 11, February 5, and April 11. (*Id.* ¶¶ 35, 36, 39.) According to the Amended Complaint, at no time on or about these dates did Hamner and Fauver discuss the status of the LOC with GGC or its affiliates.

In April 2016, Wilvert asked Fauver for information about the LOC. (*Id.* ¶ 38.) Fauver stated only that "Summit out of Denver bought our loan – here's the contact info for our point of contact." (*Id.*) LM contacted "Summit out of Denver" and learned that it did not hold SSI's LOC. (*Id.* ¶ 40.) SSI filed a petition for bankruptcy on June 24, 2016 in the Middle District of North Carolina, Durham Division. (*Id.* ¶ 41.)

GGC filed its Amended Complaint alleging actual and constructive fraud by Hamner and Fauver on June 22, 2017. (ECF No. 8.) Hamner and Fauver responded with the Motion to Dismiss on July 7, 2017 (ECF No. 10.) and attached three additional documents to their motion: (i) an

Irrevocable Letter of Standby Credit (Ex. A, ECF No. 11–1); (ii) the International Standby Practices ISP 98 (Ex. B, ECF No. 11–2); and (iii) the Proof of Claim (Ex. C, ECF No. 11–3).

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their *res judicata* effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "*detailed* factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (emphasis added). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

Claims alleging fraud are subject to Federal Rule of Civil Procedure 9(b), which requires that a plaintiff plead the circumstances surrounding the fraud with particularity. Under Rule 9(b) a "plaintiff must, at a minimum, describe the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). In other words, a plaintiff must set forth "the who, what, when, where, and how of the alleged fraud"

before access to the discovery process should be granted. *Id.* "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Accordingly, a court should hesitate to dismiss a complaint under the Rule 9(b) heightened pleading standard where "(1) the defendant has been made aware of the particular circumstances for which [he] will have to prepare a defense for trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

### III. DISCUSSION

Defendants assert that Plaintiff's fraud claims fail because Plaintiff has not pled fraud with the required particularity under Federal Rule of Civil Procedure 9(b), and Plaintiff cannot plead the elements necessary to state a claim for fraud. The Court will address each argument below.

#### A. Consideration of Defendants' Motion to Dismiss, Exhibits A, B, and C

As a preliminary matter, this Court must first address whether it is appropriate to consider the three documents Defendants attached to their Motion to Dismiss: (i) an Irrevocable Letter of Standby Credit, (Ex. A, ECF No. 11-1); (ii) the International Standby Practices 1998 ("ISP 98") (Ex. B, ECF No. 11-2); and (iii) the Proof of Claim (Ex. C, ECF No. 11-3). For the reasons set forth below, the Court will not consider Exhibits A, B, or C when determining the sufficiency of Plaintiff's Amended Complaint.

When reviewing a Rule 12(b)(6) dismissal, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."[1] *Wittohn v. Federal Ins. Co.*, 164 Fed. App'x

---

[1] The Court recognizes that, as an alternative to determining whether to consider the attached exhibits at the Motion to Dismiss stage, the Court has discretion to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d). *See, e.g., Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to

395, 396 (4th Cir. 2006) (citation omitted). However, there are exceptions to this rule. A court may take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). Similarly, a court may also consider those documents "attached to the motion to dismiss, so long as they are integral to the complaint and *authentic*." *Phillips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)) (emphasis added). A document is integral to the complaint where it is significantly related to a cause of action. *See W. Refining Yorktown, Inc. v. BP Corp. N. Am., Inc.*, 618 F. Supp. 2d 513, 515–17 (E.D. Va. 2009) (contract is integral to a breach of contract action); *Mullins v. Wells Fargo Bank, N.A.*, 2017 WL 1202656, at *2 n.2 (E.D. Va. 2017) (promissory note and deed of trust are integral to a quiet title action). A document is authentic when not in dispute by the opposing party. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner*, 162 F.R.D. at 282.

Exhibit A to the Motion to Dismiss, the Irrevocable Letter of Standby Credit, falls outside the limited exceptions to the general rule because the document is not of unquestioned authenticity. GGC disputes the authenticity of Exhibit A, aptly pointing out that the document is incomplete and unexecuted. The Court notes these deficiencies in the document as well. The "Applicable Law" provision is incomplete to the extent that it fails to designate the state law governing the document. The document is neither signed nor dated by the issuer. Taken together, these deficiencies prevent the Court from determining that the Irrevocable Letter of Standby Credit is of unquestioned authenticity. Accordingly, the Court will not consider Exhibit A in its review of the sufficiency of Plaintiff's Amended Complaint.

Nor shall the Court consider Exhibit B in its review. Exhibit B, ISP 98, is incorporated by reference into the Irrevocable Letter of Standby Credit in its "Applicable Law" provision. ISP 98 is not integral to the Amended Complaint – Plaintiff never references or relies upon this document –

---

one for summary judgment."). Noting the early stage of this litigation, the Court regards such conversion as premature and declines to do so.

nor can the Court verify its authenticity. As the Court declines to consider the Letter of Credit in its review, so too must the Court decline to consider ISP 98.

Finally, the Court shall not consider Exhibit C, the Proof of Claim. The Proof of Claim is a publicly available court record, and GGC does not dispute its authenticity. However, the Proof of Claim is not integral to the Amended Complaint despite Defendants' arguments that the Proof of Claim undercuts the damages element of GGC's fraud claims. Defendants ignore that the damages GGC pleads in the Amended Complaint are for equity contributions to SSI from August 31, 2015 through April 11, 2016, not a balance on the security deposit to which GGC was entitled to under Paragraph 33 of the Lease. Moreover, and as GGC correctly notes, Defendants' argument is substantively an affirmative defense. The Fourth Circuit is clear that "[a]motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or *the applicability of defenses.*" *Republican Party of N.C.*, 980 F.2d at 952 (emphasis added). Accordingly, this Court declines to consider the Proof of Claim in its review of GGC's Amended Complaint.

### B. Rule 9(b) Pleading Fraud With Particularity

The Court is satisfied that GGC pled the fraud claims in its Amended Complaint with particularity sufficient to meet Rule 9(b). GGC has stated with particularity the time, place, and contents of the false representations, as well as the identity of the persons making the misrepresentation and what the Defendants obtained thereby. *Kellogg Brown & Root*, 525 F.3d at 379. On the face of the Amended Complaint, GGC plausibly pleads that from August 2015 through April 2016, Defendants failed to disclose the LOC status in their communications with GGC and its affiliates. GGC further alleges that Defendants' omission, despite their opportunity to disclose during the relevant time period, resulted in GGC making four separate equity contributions to SSI pursuant to the agreement the parties struck on August 31, 2015. In accord with *Harrison*, this

7

Court is reluctant to dismiss the Amended Complaint for failure to plead fraud with particularity because (1) the Defendants have "been made aware of the particular circumstances for which they have to prepare a defense at trial"; and (2) Plaintiff has "substantial prediscovery evidence of those facts." 176 F.3d at 784.

### C. Failure to State a Claim Under 12(b)(6)

Virginia law recognizes both actual and constructive fraud. *See Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826–27 (4th Cir. 1999). To state an actual fraud claim under Virginia law, the plaintiff must plausibly plead facts that may show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Id.* at 826 (citing *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994)). By contrast, a constructive fraud claim does not require intent to mislead or scienter, but can be established for even an innocent or negligent misrepresentation. *See Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998). Constructive fraud further requires that the "false representation was made so as to induce a reasonable person to believe it, with the intent that the person would act on this representation." *Id.*

Virginia also recognizes fraud by omission, also known as concealment. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999). "Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984). Mere silence, without a duty to disclose, does not constitute concealment. *Bank of Montreal*, 193 F.3d at 827. The Fourth Circuit notes:

> A duty to disclose does not normally arise when parties are engaged in an arm's length transaction. A duty may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure).

8

*Id.* at 829 (internal citations omitted). "Obviously, the concealment itself cannot constitute one of these diversionary actions—then there would always be a duty to disclose." *Id.* at 829 n.8.

In the Motion to Dismiss, Defendants assert that GGC cannot state a claim because (1) Defendants did not have the requisite knowledge regarding the status of the LOC; and (2) GGC unreasonably relied on Defendants' representations when making equity contributions to SSI. The Court will address each of these elements of Count I and Count II in turn.

### i. Knowledge

Defendants argue that Hamner and Fauver lacked knowledge about the status of the LOC because they were not entitled to notice of renewal or cancellation of the LOC during the relevant time period. Plaintiff attempts to discredit this argument by pointing out that, on three separate occasions, Hamner requested that SSI be released from all or part of the LOC to use it as a borrowing base against rent to LM under the Lease. The Court notes that the face of the Complaint records the last of Hamner's requests on April 26, 2015, four months before the parties negotiated the arrangement involving GGC's equity contributions. When construing the Complaint in the light most favorable to GGC, the Court finds that GGC pleads sufficient facts to plausibly infer that Hamner knowingly or intentionally omitted the status of the LOC. Accordingly, this Court finds GGC has sufficiently plead this element of Count I and Count II as it pertains to Hamner.

In contrast, the Court finds the Amended Complaint is deficient of facts sufficient to plausibly show that Fauver's omissions were intentional or knowing. The Amended Complaint fails to draw any connection between Fauver and the LOC prior to August 31, 2015 that would suggest that Fauver knew about the status of the LOC. But the Amended

Complaint plausibly infers, when construed in GGC's favor, that Fauver *should have known* about the status of the LOC for two reasons. First, Fauver entered into discussions with Wilvert on August 26, 2015 regarding the equity contributions to SSI. Having the LOC in place was a condition of GGC's equity contribution, so Fauver *should* have known about the status of the LOC during the relevant time period. Second, both Fauver and Hamner are directors of SSI, and presumably Fauver should have known about the status of the LOC if he was to negotiate the terms of the equity contribution arrangement with Wilvert. Construing the Amended Complaint in the light most favorable to GGC, Fauver's omissions may have been innocent or negligent. For these reasons, the Court will grant Defendants' Motion to Dismiss as to Defendant Fauver on Count I of the Amended Complaint.

### ii. Reasonable Reliance

Defendants contend that GGC unreasonably relied upon their omissions regarding the status of the LOC because GGC had superior access to that information as a beneficiary of the LOC. Plaintiff counters that reasonable reliance is a fact-intensive inquiry, inappropriate to determine at the motion to dismiss stage, and that the record is too undeveloped for the Court to determine that reliance was unreasonable.

To support a claim of either actual or constructive fraud, a party's reliance on the representation of another must be justifiable and reasonable. *Bank of Montreal*, 193 F.3d at 827. "The touchstone of reasonableness is prudent investigation," *Hitachi*, 166 F.3d at 629, and

> if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Horner v. Ahern*, 153 S.E.2d 216, 219 (Va. 1967) (quoting *Costello v. Larsen*, 29 S.E.2d 856, 858 (Va. 1944)). "[R]eliance is a fact-intensive inquiry that is usually inappropriate for a motion to dismiss." *Carlucci v. Han*, 907 F. Supp. 2d 709, 741 (E.D. Va. 2012); *see also Smith v. Flagstar Bank, F.S.B.*, 2015 WL 1221270, at *5 (E.D. Va. Mar. 17, 2015); *Elliott v. Great Point Partners, LLC*, 2011 WL 63657, at *7 (E.D. Va. Jan. 5, 2011). Failure to investigate is not necessarily unreasonable as a matter of law. *Smith*, 2015 WL 1221270, at *5; *Elliott*, 2011 WL 63657, at *6 ("That Plaintiffs did not conduct their own investigation is not an absolute bar to their fraud claim. It is plausible that their lack of investigation was not in itself unreasonable, and it is plausible that even then they may be excused from that duty.").

At this early stage in the litigation, the Court cannot conclude that GGC's reliance was unreasonable on the face of the Amended Complaint. The factual record is too undeveloped to determine whether GGC had superior access to the status of LOC at the time of the alleged misrepresentations. On the face of the Amended Complaint, GGC stated that the parties reached an arrangement where GGC would provide equity contributions to SSI so long as the LOC was in place. Hamner made several requests prior to GGC's equity contributions to release SSI from the LOC, and GGC might reasonably infer that Hamner knew or should have known the status of the LOC from those communications. Similarly, GGC might reasonably infer that Fauver knew or should have known the status of the LOC because he negotiated the terms by which GGC would make equity contributions to SSI, terms that were *contingent on the LOC being in place*. By the terms of the arrangement, Defendants would have had a duty to disclose if the LOC was no longer in place such that their failure to do so supports a claim of concealment. And at the motion to dismiss stage, GGC's failure to plead a prudent investigation is not necessarily dispositive that GGC's

reliance was unreasonable. Accordingly, GGC adequately pleads facts sufficient to support the reasonable reliance element of Counts I and II.

## IV. CONCLUSION

In conclusion, for the reasons discussed above, the Motion to Dismiss will be granted in part and denied in part.

An appropriate Order shall issue.

/s/ 
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: September 27, 2017